**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BARNETT FOREST, LLC,** : | |
| : | **CIVIL ACTION** |
| Plaintiff : | |
| v. : | |
| : | **NO.** |
| **BOLLINGER CONSTRUCTION, INC.** : | |
| : | |
| Defendant : | |

**COMPLAINT**

Plaintiff Barnett Forest, LLC, by and through its undersigned attorneys, as and for its Complaint against Defendant Bollinger Construction, Inc., sets forth and avers as follows:

**PARTIES**

1. Plaintiff, Barnett Forest, LLC ("Barnett") is a New York limited liability company whose principal place of business is located at 77 Spruce Street, #300, Cedarhurst, NY 11516.

2. Barnett Forest, LLC's sole owner, Barnett Corporation, is a New York corporation whose principal place of business is located at 77 Spruce Street, #300, Cedarhurst, NY 11516.

3. Barnett's principal business is providing specialized lumber materials for construction projects.

4. Bollinger Construction, Inc. ("Bollinger") is a Maryland corporation whose principal place of business is located at 1 Creamery Way, Emmitsburg, MD 21727.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity between all named parties and the amount in controversy exceeds $75,000.00.

6. Venue is proper in this Court as the parties contractually designated this District in forum-selection clauses in each of the underlying contracts that are the subject of this claim.

## FACTUAL ALLEGATIONS

7. This action arises out of two (2) purchase orders executed between Barnett and Bollinger for the provision of certain lumber materials to various project sites.

8. Commencing in or around 2016 and thereafter, Barnett and Bollinger executed purchase orders for fifty-one (51) separate projects for costs of goods sold in the form of lumber supply totaling approximately $27.9 million without material incident.

## RELEVANT PURCHASE ORDERS

9. Following steady rises from July of 2020 onward, in or around May of 2021, lumber prices skyrocketed to an all-time high resulting from historic levels of demand and mounting supply chain issues, causing Barnett to supply lumber to Bollinger at an ever-increasing loss, wherein the cost of goods sold exceeded all purchase order pricings with Bollinger.

10. Despite the lumber price increases, Barnett continued to supply lumber under the binding purchase orders to Bollinger who readily received the goods.

11. By way of background, the below projects, while not at issue in this action, represent purchase orders where Barnett suffered the aforementioned losses.

12. On or about October 22, 2020, Bollinger and Barnett executed a purchase order for provision of construction materials, at a construction project known as "3445 N. Washington" located in Arlington, Virginia, in exchange for payments totaling $633,755.55.

13. On or about November 6, 2020, Bollinger and Barnett executed a purchase order for provision of construction materials, at a construction project known as "King's Crossing" located in Alexandria, Virginia, in exchange for payments totaling $2,019,988.70.

14. On or about December 14, 2020, Bollinger and Barnett executed a purchase order for provision of construction materials, at a construction project known as "Passport Nova" located in Herndon, Virginia, in exchange for payments totaling $1,832,455.36.

15. On or about March 21, 2021, Bollinger and Barnett executed two purchase orders for provision of construction materials, at a construction project known as "Fort Belvoir" located in Fort Belvoir, Virginia, in exchange for payments totaling $763,022.12.

16. There are no claims related to the above projects, and this action is limited to the two (2) purchase orders referenced below.

17. On or about May 20, 2021, Bollinger and Barnett executed a purchase order an for provision of construction materials, at a construction project known as "Arrowbrook" located in Herndon, Virginia, in exchange for payments totaling $4,090,014.87. A true and correct copy of the Arrowbrook Order Acknowledgment is annexed hereto as **Exhibit 1.**

18. On or about June 1, 2021, Bollinger and Barnett executed a purchase for provision of construction materials, at a construction project known as "West Side Shady Grove" located in Rockville, Maryland, in exchange for payments totaling $2,997,610.33. A true and correct copy of the Shady Grove Order Acknowledgment is annexed hereto as **Exhibit 2.**

19. Pursuant to each of these signed agreements, Bollinger accepted Barnett's General Terms and Conditions, which were thereby incorporated by reference into each purchase order. A true and correct copy of the Terms and Conditions is annexed hereto as **Exhibit 3.**

## Provision of Goods Pursuant to Contracts

20. Delivery of specified goods pursuant to the above referenced purchase orders, starting with the 3445 N. Washington purchase order, was to begin on November 18, 2020.

21. Pursuant to the above referenced purchase orders, Barnett's goal was to purchase lumber for provision to the relative Project sites, attempting to capture optimal rates based on the relative market rates of lumber at the time of purchase, in order to meet its obligations, and would provide the specified lumber materials to each of the Project sites for the agreed upon fixed rates set forth in the subject purchase orders.

22. However, following steady rises from July of 2020 onward, in or around May of 2021, lumber prices skyrocketed to an all-time high resulting from historic levels of demand and mounting supply chain issues; further, due in large part to the COVID-19 pandemic and inflation, suppliers had a difficult time filling the gap in lumber demand as well as meeting the current demand for lumber materials.

23. Despite price hikes and the resulting significant losses suffered by Barnett on the purchases of materials, Barnett continued to deliver goods as agreed pursuant to the purchase orders.

24. In the event Barnett was unable to acquire goods sufficient to meet its obligations pursuant to the contracts as a result of supply chain issues, or other causes, either Bollinger purchased the needed lumber from alternative sources or Barnett outsourced the purchase of certain lumber to a third-party, Cardiff Lumber, LLC ("Cardiff").

25. In the event that Bollinger purchased or "covered" the needed lumber from other sources, always at prices greater than agreed to in the subject Order Acknowledgments, Barnett would credit the added difference paid by Bollinger thus honoring the purchase order pricing, again to its own detriment and financial loss.

26. In or around June of 2021, in order to overcome market inefficiencies, Barnett began negotiations for an assignment of its obligations pursuant to the Arrowbrook Order Acknowledgment with Cardiff to supply materials in order to meet its obligations pursuant to the above referenced contracts.

27. Around approximately June 2021, the market rate for lumber prices dropped reasonably below market rates, at which point Barnett's negotiated supply rates would again produce a profit; on May 7, 2021, market pricing on average for lumber was valued at approximately $1,686 USD per 1000 board feet, but by July 15, 2021, the rate had dropped to a low of $490 USD per 1000 board feet.

28. Thereafter, Cardiff and Barnett reached a tentative agreement to assign certain responsibilities and rights to payment under the Arrowbrook and Shady Grove Order Acknowledgments; however, Bollinger refused to sign off on the assignment despite the fact that no such sign off was required by the purchase orders or Terms and Conditions.

29. Not only did Bollinger unreasonably reject the assignment of Barnett's contractual obligations and rights to payment, in or around July of 2021, Bollinger began repeatedly demanding assurances from Barnett regarding delivery of goods and exact timelines for delivery of the same, despite substantial compliance to date with all previous contractual obligations.

30. Bollinger further demanded assurances that Barnett would be able to perform on both the Arrowbrook Order Acknowledgment and Shady Grove Order Acknowledgment prior to the start dates for Barnett's performance on each order.

31. Both Barnett and Cardiff repeatedly assured Bollinger, as well as the owner of the Arrowbrook Project, CBG Building Company LLC ("CBG"), that delivery of the required materials would be made pursuant to their contract, and that the parties were more than capable of meeting all contractual obligations.

32. Specifically, on or around July 16, 2021, during discussions related to the upcoming Arrowbrook project, Bollinger demanded that Barnett provide assurances to CBG that Barnett would be able to supply the subject goods.

33. Thereafter, at the direction of Bollinger, on or around July 19, 2021, Jess Abell, Chris Creger, and Jason Rosenthal on behalf of Barnett spoke with Bryan Drewen on behalf of CBG via phone conference, and relayed assurance of Barnett's ability to meet its obligations through its assignment to Cardiff under the Arrowbrook Order Acknowledgment, and CBG approved of Barnett's and Cardiff's timeline and assurances.

34. Barnett also held multiple calls with CBG over the following week to affirm that Barnett was more than capable of delivering all goods required under the contract pending Bollinger's approval of Barnett's assignment to Cardiff.

35. However, despite assurances that its obligations under the contract would be met, Bollinger unreasonably demanded acceleration of delivery of all materials "ASAP" pursuant to all currently open purchase orders (exclusive of the Arrowbrook and Shady Grove Order Acknowledgments), as well as updates on all materials being delivered, in some instances demanding exact dates of delivery, all within a 24-48 hour timeframe.

36. Upon information and belief, such unreasonable demands were made by Bollinger in bad faith in an attempt to claim that Barnett was noncompliant with its obligations under the purchase orders so that Bollinger could cancel the Arrowbrook Shady Grove Order Acknowledgments, and go back to market to try to cut expenses on lumber materials.

37. On numerous occasions, Barnett, following numerous calls with Cardiff and CBG, offered confirmation of dates that all relevant goods were shipped, and indicated as accurate a timeline for anticipated delivery as was reasonable.

38. Thereafter, beginning on or around July 26, 2021 Bollinger began rejecting delivery of certain conforming goods at Fort Belvoir, and informed Barnett of the same.

39. Bollinger notified Barnett that it had purchased replacement materials as an alleged result of Barnett's failures, despite that Barnett provided assurances and materials as demanded by Bollinger.

40. On or around July 27, 2021, legal counsel for Bollinger notified Barnett via letter that it would no longer be honoring the Arrowbrook Order Acknowledgment or Shady Grove Order Acknowledgment, and proceeded to purchase materials that were to be provided by Barnett from third parties to close out Barnett's existing orders.

41. As a result of market fluctuations, Barnett suffered the following losses on the contracts that Bollinger did not repudiate:

   a. 3445 N. Washington – ($523,898.86)

   b. Fort Belvoir – ($34,060.54)

   c. Kings Crossing – ($746,787.50)

   d. Passport Nova – ($965,214.21)

   e. Total losses: ($2,269,961.11)

42. However, following the substantial drop of market pricing for lumber, which created an opportunity for Barnett to finally turn a profit and make back substantial losses, of which Bollinger was well aware, on its executed purchase orders on the Arrowbrook and Shady Grove projects, Bollinger wrongfully repudiated the Arrowbrook and Shady Grove Order Acknowledgments in bad faith in an attempt to reduce its material costs by going back to market to fulfill obligations previously covered under the Order Acknowledgments.

43. After wrongfully repudiating the Arrowbrook Order Acknowledgment and Shady Grove Acknowledgment, Bollinger failed to perform under the same, constituting breaches of the two Order Acknowledgments.

44. As a result of Bollinger's wrongful repudiation and breach of the Arrowbrook and Shady Grove Order Acknowledgments, Barnett has incurred damages, in an amount to be determined at trial, but not less than $2,042,049.00 and $1,284,192.00 respectively, totaling $3,326,241.00.

**AS AND FOR A FIRST CAUSE OF ACTION**
*(Breach of Contract against Bollinger – Arrowbrook Order Acknowledgment)*

45. Barnett repeats and realleges the allegations set forth in Paragraphs 1 through 44 as though fully set forth herein.

46. Barnett and Bollinger entered into a binding contract, the Arrowbrook Order Acknowledgment.

47. Pursuant to the Arrowbrook Order Acknowledgment, Barnett was to furnish and provide lumber construction materials to Bollinger at the Arrowbrook Project in exchange for payment.

48. Prior to the first date of delivery, Bollinger repudiated the Arrowbrook Order Acknowledgment without justification under the same.

49. As a result of Bollinger's outward refusal to comply with the terms of the Arrowbrook Order Acknowledgment, Barnett has suffered damages resulting from lost profit.

50. Prior to Bollinger's repudiation of the Arrowbrook Order Acknowledgment, Barnett had complied with all relevant conditions precedent set forth in the Arrowbrook Order Acknowledgment.

51. Bollinger's failure to purchase lumber goods pursuant to the Arrowbrook Order Acknowledgment constitutes a material breach of the contract.

52. As a direct and proximate result of Bollinger's repudiation and breach of the Arrowbrook Order Acknowledgment, Barnett has suffered damages in an amount to be determined, but not less than $2,042,049.00 as a direct result of lost profits to Plaintiff under the Arrowbrook Order Acknowledgment amount, together with interest.

53. Based on the foregoing, Bollinger is liable to Barnett for an amount to be determined at trial, but not less than $2,042,049.00 as a direct result of lost profits to Plaintiff under the Arrowbrook Order Acknowledgment amount, together with interest.

## AS AND FOR A SECOND CAUSE OF ACTION
*(Breach of Contract against Bollinger – Shady Grove Order Acknowledgment)*

54. Barnett repeats and realleges the allegations set forth in Paragraphs 1 through 53 as though fully set forth herein.

55. Barnett and Bollinger entered into a binding contract, the Shady Grove Order Acknowledgment.

56. Pursuant to the Shady Grove Order Acknowledgment, Barnett was to furnish and provide lumber construction materials to Bollinger at the Shady Grove Project in exchange for payment.

57. Prior to the first date of delivery, Bollinger repudiated the Shady Grove Order Acknowledgment without justification under the same.

58. As a result of Bollinger's outward refusal to comply with the terms of the Shady Grove Order Acknowledgment, Barnett has suffered damages resulting from lost profit.

59. Prior to Bollinger's repudiation of the Shady Grove Order Acknowledgment, Barnett had complied with all relevant conditions precedent set forth in the Shady Grove Order Acknowledgment.

60. Bollinger's failure to purchase lumber goods pursuant to the Shady Grove Order Acknowledgment constitutes a material breach of the contract.

61. As a direct and proximate result of Bollinger's repudiation, Barnett has suffered damages in an amount to be determined, but not less than $1,284,192.00 as a direct result of lost profits to Plaintiff under the Shady Grove Order Acknowledgment amount, together with interest.

62. Based on the foregoing, Bollinger is liable to Barnett for an amount to be determined at trial, but not less than $1,284,192.00 as a direct result of lost profits to Plaintiff under the Shady Grove Order Acknowledgment amount, together with interest.

WHEREFORE, Plaintiff Barnett Forest, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Bollinger Construction, Inc., in an amount not less than $3,326,241.00, together with interest, costs of suit, attorney's fees, and such other relief as this Court deems just and proper.

                                  Respectfully Submitted,

                                  **COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC**

Date: April 28, 2022            By: _____

                                      Edward D. Altabet, Esquire
                                          ealtabet@cohenseglias.com
                                    Richard J. Fusco, Esquire
                                          rfusco@cohenseglias.com
                                  55 Broadway, Suite 901
                                  New York, NY 10006
                                  (215) 871-7400
                                  Attorneys for Plaintiff,
                                      Barnett Forest, LLC